T.C. Memo. 2017-3

UNITED STATES TAX COURT

CANDACE ELAINE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5023-14.                          Filed January 3, 2017.

Candace Elaine, pro se.

<u>Willis B. Douglass</u> and <u>Mindy S. Meigs</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, <u>Judge</u>:  Respondent determined a deficiency of $11,900 in petitioner's Federal income tax and an accuracy-related penalty pursuant to section 6662(a) of $2,380 for the 2011 taxable year.[1]  The issues for decision are:

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*2]** (1) whether petitioner is liable for the 10% additional tax imposed by section 72(t) on early distributions from a qualified retirement plan and (2) whether petitioner is liable for the accuracy-related penalty.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in California at the time the petition was filed with the Court.

In June 2009 petitioner was laid off from her job of 23 years as a call center manager with a mutual fund company. At that time and during the year in issue petitioner was a single mother, raising two daughters on her own without support from anyone else. On account of the then economic downturn petitioner was unable to find another job, and she remained unemployed until approximately 2014. Consequently, in order to provide for her own subsistence and that of her daughters, petitioner made a series of withdrawals from her individual retirement account (IRA), which was administered by Capital Bank & Trust Co. (Capital Bank). During 2011 petitioner received four distributions totaling $119,000 from that account. As of the close of that year petitioner was under 59½ years of age.

For each distribution Capital Bank issued petitioner a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs,

[*3] Insurance Contracts, etc.  According to respondent's wage and income transcript for petitioner's 2011 taxable year, each Form 1099-R reflected that the entire distribution was taxable and that the distribution was an early distribution with "no known exception".[2]  Each Form 1099-R also reflected Federal income tax withheld.[3]

Petitioner prepared and filed timely her Form 1040, U.S. Individual Income Tax Return, for 2011 (2011 return).  On the 2011 return petitioner reported taxable IRA distributions of $119,675,[4] interest of $136 (including $5 of tax-exempt interest), a net business loss from a sole proprietorship of $39,379, and

[2]The Forms 1099-R that were included with petitioner's 2011 return as a stipulated exhibit do not reflect this.  One of these forms reflects the distribution code of "7", i.e., a "normal distribution", while the other three forms reflect the distribution code of "2", an "early distribution, exception applies".  There is no explanation for this inconsistency in the record.  The inconsistency, however, is "much ado about nothing" and does not alter the outcome of this case because, as discussed in the text, petitioner has the burden of proving that respondent's determination that the sec. 72(t) additional tax applies to the Capital Bank distributions is incorrect.

[3]The distributions petitioner received from Capital Bank were in the following amounts:  $40,000, $8,000, $16,000, and $55,000.  The Forms 1099-R reflected Federal income tax withheld of $2,000, $800, $600, and $5,500, respectively, from these distributions, for a total amount withheld of $8,900.

[4]The additional reported amount of $675 reflects a distribution of death benefits petitioner received during 2011 from Northern Trust Co. which is not subject to the sec. 72(t) additional tax.  Accordingly, this distribution is not at issue.

[*4] unemployment compensation of $9,000. After itemized deductions totaling $45,148 and exemptions totaling $11,100 (for herself and her daughters), petitioner reported taxable income of $33,184 and total tax of $4,119. Petitioner did not report any amount for the additional tax on early distributions from IRAs pursuant to section 72(t), nor did she attach Form 5329, Additional Taxes on Qualified Plans (Including IRAs) and Other Tax-Favored Accounts, to the 2011 return. Finally, petitioner reported Federal income tax withheld of $8,968[5] and claimed an overpayment of $4,849, which was refunded to her in May 2012.

On June 3, 2013, respondent's Automated Underreporter (AUR) function sent petitioner a Notice CP2000 proposing changes to the 2011 return on the basis that certain income and payment information reported by third parties to respondent differed from the amounts shown on the return. The discrepancy was attributable to petitioner's not reporting any amount for the additional tax on IRAs under section 72(t). As a result, respondent proposed that she owed an additional $11,900 in income tax plus statutory interest and that she should be liable for a substantial understatement of income tax penalty of $2,380. In response, petitioner sent respondent a letter dated June 26, 2013, explaining that because her

[5]This amount reflects the Federal income tax of $8,900 withheld from the Capital Bank distributions as well as the Federal income tax of $68 withheld from the Northern Trust Co. distribution.

[*5] IRA was her only means of income to pay bills and support herself and her daughters, she understood that the distributions from her IRA "would fall under the 'exception' rules [sic] due to * * * [her] financial hardship." She also contended that she "took the federal and state penalties required and the amounts were indicated on * * * [her] tax return as income therefore disqualifying * * * [her] from other benefits that * * * [she] normally would have been allowed." In later correspondence she sent to respondent in 2013, petitioner continued to plead financial hardship.

On December 9, 2013, respondent mailed petitioner a notice of deficiency, determining that the section 72(t) additional tax was applicable to the entire amount of the distributions from her IRA and that she was liable for the substantial understatement of income tax penalty under section 6662(a) and (b)(2). Petitioner timely petitioned this Court disputing those determinations, contending that she believed the amounts withheld from her IRA distributions included a "10% [F]ederal and a 10% state penalty" and asking that she not be held liable for the tax and the penalty on the ground that during 2011 she was experiencing financial hardship.

**[*6]**                                    OPINION

I.      Additional Tax Under Section 72(t)

In general, the determinations of the Commissioner in a notice of deficiency are presumed correct and, except for the burden of production in any court proceeding with respect to a taxpayer's liability for any "penalty, addition to tax, or additional amount", see sec. 7491(c), the taxpayer bears the burden of proving that the Commissioner's determinations are erroneous, see Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). This burden of production remains on the taxpayer even with respect to the additional tax under section 72(t) because the section 72(t) additional tax is a "tax" and not a "penalty, addition to tax, or additional amount" within the meaning of section 7491(c).[6] See El v. Commissioner, 144 T.C. 140, 148 (2015) (citing Ross v. Commissioner, T.C. Memo. 1995-599, 1995 Tax Ct. Memo LEXIS 597, at *16-*20).

Section 72(t) imposes an additional 10% tax on early distributions from a qualified retirement plan (as defined in section 4974(c)(4)). See sec. 72(t)(1). The additional 10% tax, however, does not apply to certain enumerated distributions.

---

[6]Petitioner also does not contend that the burden of proof should shift to respondent under sec. 7491(a), nor has she established that the requirements for shifting the burden of proof have been met. Accordingly, the burden of proof with respect to the sec. 72(t) additional tax remains on petitioner.

[*7] See sec. 72(t)(2). Relevant exceptions include distributions from an individual retirement plan to an unemployed individual for health insurance premiums and distributions from an individual retirement plan to an individual for certain qualified higher education expenses. Sec. 72(t)(2)(D) and (E).

The parties do not dispute that petitioner received distributions totaling $119,000 in 2011 from her IRA, which is a qualified retirement plan under section 4974(c)(4). Petitioner testified that the distributions were essentially her only means of income to pay bills and to support herself and her daughters. Upon the Court's questioning at trial as to what specific types of expenses she paid using any of the distributed moneys, petitioner indicated that she did use a portion of the distributions to pay monthly medical insurance premiums and her student loan indebtedness. However, her testimony in this regard was general, and she was unable to produce any documentation substantiating her testimony. It is evident that petitioner made withdrawals from her IRA because of financial hardship; but as we have held on numerous other occasions, there is no exception under section 72(t) for financial hardship. See, e.g., Arnold v. Commissioner, 111 T.C. 250, 255 (1998) (citing Duffy v. Commissioner, T.C. Memo. 1996-556, and Pulliam v. Commissioner, T.C. Memo. 1996-354); Milner v. Commissioner, T.C. Memo. 2004-111; Gallagher v. Commissioner, T.C. Memo. 2001-34; Robertson v.

[*8] Commissioner, T.C. Memo. 2000-100, aff'd, 15 F. App'x 467 (9th Cir. 2001). While we acknowledge and are sympathetic to petitioner's financial straits, we have no authority to disregard the express and unambiguous wording of the statute. See Pulliam v. Commissioner, slip op. at 7-8 (citing Estate of Cowser v. Commissioner, 736 F.2d 1168, 1171-1174 (7th Cir. 1984), aff'g, 80 T.C. 783, 787-788 (1983)). On the record before us, we find that none of the enumerated statutory exceptions applies to petitioner, and thus the distributions from petitioner's IRA in 2011 are subject to the section 72(t) additional tax.

We also reject as without merit petitioner's apparent contention, as manifested from certain evidence--two April 2015 letters she sent to respondent and two 2012 notices she received from respondent--that we should conclude there is no deficiency in this case because Internal Revenue Manual (IRM) pt. 4.10.2.8.5 (Jan. 17, 2012) prohibits repetitive examinations of the same issue. The evidence shows that respondent's AUR function sent petitioner a Notice CP2000 dated April 2, 2012, informing her of a proposed income tax increase (including interest and penalties) for the 2010 taxable year on account of the same section 72(t) issue implicated here. This evidence also shows that respondent's AUR function sent petitioner a Notice CP2005 dated November 19, 2012, informing her that the inquiry for the 2010 taxable year was closed without change. The IRM provision

**[*9]** upon which petitioner relies sets forth certain actions to be taken by an examining agent, including ultimately determining whether to close the examination for the current taxable year, where the taxpayer, in response to the agent's initial contact with the taxpayer, informs the agent that an examination of the same issue or issues in either of the two preceding taxable years resulted in no change or a small tax change.

Petitioner's contention is without merit for several reasons. First, it has long been settled that there is no statutory or regulatory prohibition against auditing a taxpayer's returns for two consecutive years or against issuing a notice of deficiency for two consecutive years as taxes are computed on an annual basis, with each year being the origin of a new liability and a separate cause of action. See Commissioner v. Sunnen, 333 U.S. 591, 598 (1948). Second, as we have previously held, the provision in the IRM on repetitive examinations (or any IRM provision for that matter) is discretionary rather than mandatory, creating no legally enforceable rights for taxpayers. See, e.g., Greene v. Commissioner, T.C. Memo. 1992-202, 1992 Tax Ct. Memo LEXIS 239; Tucker v. Commissioner, T.C. Memo. 1983-210, 1983 Tax Ct. Memo LEXIS 578; Chapman v. Commissioner, T.C. Memo. 1982-68, 1982 Tax Ct. Memo LEXIS 675; see also Marks v. Commissioner, 947 F.2d 983, 986 n.1 (D.C. Cir. 1991) (citing Pomeroy v. United

[*10] <u>States</u>, 864 F.2d 1191, 1194-1195 (5th Cir. 1989)), <u>aff'g</u> T.C. Memo. 1989-575.  Third, there is no evidence in the record to indicate in any event that petitioner responded to an initial contact letter from respondent regarding her 2011 taxable year by requesting that respondent close the 2011 case on the ground that respondent had closed the 2010 case without change.  In other words, there is no evidence that petitioner raised the repetitive examinations issue before respondent issued the notice of deficiency for 2011.  Indeed, the record suggests that petitioner did not raise the repetitive examinations issue until April 2015, after she filed her Tax Court petition and approximately two months before trial.  Thus, there was no applicable procedure for respondent to follow.

We sustain respondent's determination to impose the section 72(t) additional tax on the total amount of the distributions from petitioner's IRA in 2011.

II.    <u>Accuracy-Related Penalty Under Section 6662(a)</u>

We now address whether petitioner is liable under section 6662(a) and (b)(2) for an accuracy-related penalty on an underpayment due to a substantial understatement of income tax.

Section 6662(a) imposes a 20% accuracy-related penalty based on any portion of an underpayment of tax required to be shown on a return if, as provided

**[\*11]** by section 6662(b), the underpayment is attributable to, among other things, any substantial understatement of income tax. The term "substantial understatement" means an understatement of income tax that exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(2)(A). The Commissioner bears the burden of production regarding a taxpayer's liability for the accuracy-related penalty and thus is required to come forward with sufficient evidence indicating that imposition of the penalty is appropriate. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner meets his burden of production, the taxpayer bears the burden of proving, through persuasive evidence, that the Commissioner's penalty determination is incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Higbee v. Commissioner, 116 T.C. at 447. Respondent has discharged his burden of production by providing sufficient evidence showing that petitioner's understatement of income tax for 2011 exceeds the greater of 10% of the tax that was required to be shown on the 2011 return or $5,000.

Application of the accuracy-related penalty may be avoided with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and the taxpayer acted in good faith with respect to such portion.

[*12] Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 446-447. The determination of whether the taxpayer had reasonable cause and acted in good faith depends upon the pertinent facts and circumstances of a particular case. Sec. 1.6664-4(b)(1), Income Tax Regs. We consider, among other factors, the experience, education, and sophistication of the taxpayer; however, the principal consideration is the extent of the taxpayer's efforts to assess the proper tax liability. Id.; see also Higbee v. Commissioner, 116 T.C. at 448. Taking into consideration the taxpayer's experience, education, and sophistication, an honest misunderstanding of fact or law may indicate reasonable cause and good faith. Higbee v. Commissioner, 116 T.C. at 449 (citing Remy v. Commissioner, T.C. Memo. 1997-72).

The many section 72(t) cases, just some of which have been cited supra pp. 7-8, strongly indicate a common misunderstanding among taxpayers that financial hardship is an exception to the section 72(t) additional tax. Bolstered by the fact that, for whatever reason, respondent closed her 2010 case without change, petitioner proceeded under that misunderstanding not only with respect to 2011 but apparently with respect to 2012 as well. On the basis of the record before us, we find that petitioner had reasonable cause and acted in good faith.

**[*13]** Consequently, petitioner is not liable for the substantial understatement of income tax penalty under section 6662(a) and (b)(2).

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent as to the deficiency and for petitioner as to the accuracy-related penalty under section 6662(a)</u>.